IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| FIDELITY AND DEPOSIT COMPANY OF MARYLAND<br><br>*Plaintiff,*<br><br>v.<br><br>FRANK SINITO, MALISSE SINITO, AMERICAN PRESERVATION BUILDERS, LLC, MILLENNIA HOUSING DEVELOPMENT, LTD., and MILLENNIA HOUSING MANAGEMENT, LTD.<br><br>*Defendants.* | Civil Action No. |

## COMPLAINT

Plaintiff Fidelity and Deposit Company of Maryland ("F&D" or the "Surety") respectfully states the following for its Complaint against Defendants Frank Sinito, Malisse Sinito, American Preservation Builders, LLC, Millennia Housing Development, Ltd., and Millennia Housing Management, Ltd. (each Defendant individually an "Indemnitor" and all Defendants collectively the "Indemnitors"):

## I. PARTIES

1. F&D is a corporation formed under Illinois law, with its corporate headquarters and principal place of business located at 1299 Zurich Way, Schaumburg, IL 60196, which is the location from which F&D's high-level officers direct, control, and coordinate F&D's corporate activities. Thus, F&D is a citizen of Illinois for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

2. Upon information and belief, Defendant American Preservation Builders, LLC is a limited liability company formed under Ohio law, whose members are citizens of Ohio. Thus, upon information and belief, Defendant American Preservation Builders, LLC is a citizen of Ohio for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

3. Upon information and belief, Defendant Millennia Housing Development, Ltd. is a limited liability company formed under Ohio law, whose members are citizens of Ohio. Thus, upon information and belief, Defendant Millennia Housing Development, Ltd. is a citizen of Ohio for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

4. Upon information and belief, Defendant Millennia Housing Management, Ltd. is a limited liability company formed under Ohio law, whose members are citizens of Ohio. Thus, upon information and belief, Defendant Millennia Housing Management, Ltd. is a citizen of Ohio for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

5. Upon information and belief, Defendant Frank Sinito is domiciled in and is a citizen of Ohio for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

6. Upon information and belief, Defendant Malisse Sinito is domiciled in and is a citizen of Ohio for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

## II. JURISDICTION AND VENUE

7. This Honorable Court possesses original jurisdiction over F&D's Complaint pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and the matter in controversy is between citizens of different states (Illinois Plaintiff versus Ohio Defendants).

8. This Honorable Court possesses the power to declare the respective rights and other legal relations of F&D and the Indemnitors as requested herein pursuant to 28 U.S.C. § 2201(a).

9. Venue is proper in the United States District Court for the Northern District of Ohio, Eastern Division, pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 115(a)(1) because Defendants American Preservation Builders, LLC, Millennia Housing Development, Ltd., and Millennia Housing Management, Ltd. "reside" in the Northern District of Ohio, Eastern Division (*i.e.*, Cuyahoga County, Ohio) and all the Indemnitors "reside" in Ohio.

10. Moreover, by executing the General Indemnity Agreement at issue in this action (the "Indemnity Agreement"), the Indemnitors consented to personal jurisdiction and venue in any Federal Court in any district in which (a) any Indemnitor resides or has property, (b) any bonded obligation arises or is performed in whole or in part, or (c) any action may be brought against F&D.

11. Thus, jurisdiction and venue are also proper in the Northern District of Ohio, Eastern Division under the Indemnity Agreement because certain of the Indemnitors "reside" in and/or have property in the Northern District of Ohio, Eastern Division (*i.e.*, Cuyahoga County, Ohio).

### III. FACTUAL ALLEGATIONS

### The Indemnity Agreement

12. Defendant American Preservation Builders, LLC has engaged in the construction contracting business and has needed to obtain surety bonds in relation to certain of its construction contracts.

13. As a condition of F&D's issuance of surety bonds of behalf of Defendant American Preservation Builders, LLC, the Indemnitors executed the Indemnity Agreement in F&D's favor on or about March 3, 2016, a copy of which Indemnity Agreement is attached hereto as **Exhibit 1**.

14. With respect to the individuals/entities that qualify as "Indemnitors" thereunder, the scope of bonds to which their obligations thereunder apply, the entities to which their obligations are owed, and their joint and several liability, an introductory Paragraph of the Indemnity Agreement states:

> THIS GENERAL INDEMNITY AGREEMENT ("Agreement").dated this 3rd day of March. 2016 by [Indemnitors] (each an "Indemnitor" and all of the above individually and collectively "Indemnitors") in favor of ZURICH AMERICAN INSURANCE COMPANY and ZURICH INSURANCE GROUP LTD and all their respective subsidiaries, affiliates and associated companies in any jurisdiction, including but not limited to FIDELITY AND DEPOSIT COMPANY OF MARYLAND, COLONIAL AMERICAN CASUALTY AND SURETY COMPANY, ZURICH INSURANCE COMPANY LTD, and AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, and their respective successors and assigns (individually and collectively "Surety") with respect to any bond, undertaking, and/or obligation of suretyship or guarantee executed, provided or procured (herein "issued") by Surety (whether as surety, co-surety, reinsurer or otherwise) in the name of or on behalf of any Indemnitor, any Related Entity, any other entity on request in accordance with this Agreement, or any combination thereof, whether issued prior to or after the execution of this Agreement, and all renewals, extensions, modifications and substitutions of bonds (collectively "Bonds" and each individually a "Bond"). This Agreement shall be liberally construed so as to fully protect, exonerate, indemnify and hold Surety harmless from all liability and Loss.

As an inducement to Surety to issue or refrain from cancelling Bonds, Indemnitors represent and agree for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, as follows . . . .

15. With respect to the Indemnitors' duty to exonerate, indemnify, and hold F&D harmless from any and all liability and "Loss," Paragraph 2 of the Indemnity Agreement, entitled "Indemnity," provides, in relevant part:

> Indemnitors shall exonerate, indemnify, and hold Surety harmless from any and all liability and Loss, sustained or incurred, arising from or related to: (a) any Bond, (b) any Claim, (c) any Indemnitor failing to timely and completely perform or comply with this Agreement, (d) Surety enforcing this Agreement or (e) any act of Surety to protect or procure any of Surety's rights, protect or preserve any of Surety's interests, or to avoid, or lessen Surety's liability or alleged liability.

16. Paragraph 30 of the Indemnity Agreement defines "Loss" as follows:

> **Loss** means all premiums due to Surety and any and all liability, loss, Claims, damages, court costs and expenses, attorneys' fees (including those of Surety), consultant fees, and all other costs and expenses, including but not limited to any additional or extra-contractual damages arising from Surety's Settlement of any Claim. Pre-judgment and post- judgment interest shall accrue from the date of any payment made by Surety with respect to any of the foregoing at the maximum default rate permitted by law.

17. With respect to the scope of the Indemnitors' exoneration, indemnification, and other obligations, Paragraph 2 of the Indemnity Agreement further provides, relevant part:

> The liability of Indemnitors to Surety under this Agreement includes all Claims made on Surety, all payments made, Loss incurred, and all actions taken by Surety under the Good Faith belief that Surety is, would be or was liable for the amounts paid or the actions taken, or that it was necessary or expedient to make such payments or take such actions, whether or not such liability, necessity or expediency existed.

18. With respect to the timing and/or triggering of the Indemnitors' payment and other obligations to F&D, Paragraph 2 of the Indemnity Agreement further states, "Indemnitors shall promptly, upon demand, make payment to Surety as soon as liability or Loss exists, whether or not Surety has made any payment."

19. With respect to the procedure for proving the fact, amount, and extent of the Indemnitors' liability to F&D for "Loss," Paragraph 2 of the Indemnity Agreement also states, "An itemized statement of Loss, sworn to by any officer of Surety, or the voucher or other evidence of any payment, shall be prima facie evidence of the fact, amount and extent of the liability of Indemnitors for such Loss."

20. With respect to the Indemnitors' obligation to procure the full and complete discharge of F&D's obligations under any Bonds upon demand, Paragraph 2 of the Indemnity Agreement further states:

> Indemnitors shall promptly, upon demand, procure the full and complete discharge of Surety from all Bonds and all liability in connection with such Bonds. If Indemnitors are unable to obtain discharge of any or all such Bonds within the time demanded, Indemnitors shall promptly deposit with Surety an amount of money that Surety determines is sufficient to collateralize or pay any outstanding bonded obligations.

21. Paragraph 30 of the Indemnity Agreement defines "Claim" or "Claims" as "any notice, claim, demand, defense, counterclaim, setoff, lawsuit or proceeding or circumstance which may constitute, lead to or result in Loss, liability, or asserted liability in connection with any Bond, any Bonded Contract, or this Agreement."

22. Paragraph 30 of the Indemnity Agreement defines further defines "Good Faith" as, "with respect to any act, exercise of discretion or omission by Surety, an absence of dishonesty, evil intent and actual malice toward Principal and Indemnitors."

23. Paragraph 30 of the Indemnity Agreement defines "Principal" as "any person or entity whose obligation is guaranteed by a Bond."

24. Paragraph 30 of the Indemnity Agreement defines a "Bonded Contract" as "any contract or other obligation referred to in any Bond or secured by any Bond."

25. With respect to F&D's absolute and unconditional right to settle any "Claim," Paragraph 3 of the Indemnity Agreement, entitled "Surety's Right to Perform, Settle and/or Modify," states:

> Surety shall have the absolute and unconditional right and is authorized but not required to: (a) adjust, pay, perform, decline to perform, compromise, settle, deny, litigate or otherwise resolve any Claim and/or any claim, counterclaim, defense or setoff held by or made against any Indemnitor, Principal or other entity and/or to take any action to protect any rights of Surety or to preserve or protect Surety's interests, or to avoid or lessen any alleged liability (hereinafter "Settlement"); and (b) modify, consent to or decline to consent to modification of any Bond and/or Bonded Contract, and/or to take, consent to or decline to consent to any assignment (hereinafter "Modification"). Any Settlement and/or Modification by Surety shall be final, binding and conclusive upon Indemnitors. Indemnitors shall remain bound under this Agreement for all Loss even though any such Settlement or Modification by Surety does or might substantially increase the liability of Indemnitors.

26. As a corollary of the Indemnitors' obligation to exonerate, indemnify, and hold F&D harmless from any and all liability and "Loss" and F&D's absolute and unconditional right to settle any "Claim," Paragraph 4 of the Indemnity Agreement, entitled "Placing Funds," requires the Indemnitors to collateralize F&D on demand in relation to any potential liability or "Loss" as follows:

> Indemnitors agree to promptly deposit with Surety, on demand, an amount of money that Surety determines is sufficient to fund any liability or Loss. Such funds may be used by Surety to pay Loss or may be held by Surety as collateral against potential future Loss. Any remaining funds held by Surety after payment of all sums due to Surety under this Agreement shall be returned upon the complete release and/or discharge of Surety's liability under all Bonds.

27. With respect to the Indemnitors' duty to provide F&D access to any and all information and documents concerning the business or financial situation of any Indemnitor or any Related Entity, Paragraph 11 of the Indemnity Agreement, entitled "Financial Statements, Books and Records," states:

> Indemnitors shall promptly provide Surety with any and all information and documentation concerning the business or financial situation of any Indemnitor or

any subsidiary, affiliate or Related Entity of any Indemnitor, as requested by Surety. Indemnitors shall furnish on demand, and Surety shall have the right to access, examine and copy the books, records and accounts of Indemnitors and of any entity under the control of any Indemnitor, at no cost to Surety. Indemnitors authorize any entity in which funds of any Indemnitor may be deposited to furnish to Surety a statement of the amount of such deposits as of the date requested. Indemnitors authorize any and all lenders, obligees, subcontractors, suppliers, accountants, other insurers, and other persons or entities to furnish to Surety any information requested by Surety, including but not limited to the performance of obligations under any Bond or Bonded Contract and payments related to any such Bond or Bonded Contract.

28. With respect to F&D's right to specific performance of the Indemnitors' obligations thereunder, Paragraph 16 of the Indemnity Agreement states:

Indemnitors acknowledge that the failure of Indemnitors, collectively or individually, to perform or comply with any provision of this Agreement shall cause irreparable harm to Surety for which Surety has no adequate remedy at law. Indemnitors agree that Surety shall be entitled to injunctive relief and/or specific performance, and Indemnitors waive any claims or defenses to the contrary.

29. Paragraph 18 of the Indemnity Agreement, entitled "Joint and Several Liability," confirms that the Indemnitors' obligations to F&D are joint and several and that F&D has the option of pursuing relief against one or more of the Indemnitors as follows, "Indemnitors are jointly and severally liable to Surety under this Agreement. Surety may enforce this Agreement against any Indemnitor without joining any other Indemnitor, person or entity."

30. With respect to the Indemnitors' consent to jurisdiction and venue in this Court, Paragraph 21 of the Indemnity Agreement, entitled "Lawsuits and Jurisdiction," states:

Separate lawsuits may be brought under this Agreement as causes of action accrue, and the bringing of any lawsuit or the recovery of any judgment on any cause of action shall not prejudice or bar the bringing of other lawsuits, on the same or other causes of action, whether arising before or after any other lawsuit or cause of action. In any legal proceeding brought by or against Surety that in any way relates to this Agreement, each Indemnitor irrevocably and unconditionally submits to the jurisdiction, at Surety's sole option, of the Federal, state and local courts in which (a) any Indemnitor resides or has property, (b) any bonded obligation arises or is performed in whole or in part, or (c) any action may be brought against Surety. Indemnitors submit to the jurisdiction of such courts and waive and agree not to

assert that they are not subject to the jurisdiction of any such court or that the jurisdiction and/or venue is in an inconvenient forum or otherwise improper.

31. With respect to the Indemnitors' knowing and voluntary waiver of any right they may have otherwise possessed to a trial by jury relative to the Indemnity Agreement, Paragraph 26 of the Indemnity Agreement, entitled "Jury Waiver," states, "Indemnitors hereby knowingly and voluntarily waive and covenant that they will not assert any right to trial by jury in respect to any legal proceeding arising out of this Agreement."

**The Indemnitors' Failure to Indemnify, Exonerate, and/or
Hold the Surety Harmless and the Surety's Resulting "Loss"**

32. In reliance upon its rights against the Indemnitors under the Indemnity Agreement, F&D issued Payment Bond No. 9243096 (the "Payment Bond"), a copy of which is attached hereto as **Exhibit 2**, on behalf of Defendant American Preservation Builders, LLC relative to its construction contract (the "Bonded Contract") with Hubbard Gardens IN TC, LP (the "Owner") on a construction project identified in the Payment Bond as exterior and interior renovations at Hubbard Gardens (the "Project").

33. Shepherd Company, LLC d/b/a ShepCo Commercial Finishes ("ShepCo"), who was a subcontractor of Defendant American Preservation Builders, LLC, pursued a claim against F&D under the Payment Bond in excess of $346,911.94 in Case No. 49D11-2206-PL-021394 in the Superior Court for Marion County, Indiana (the "ShepCo Payment Bond Claim").

34. P.I.P.E., Inc. ("PIPE"), who was a subcontractor of Defendant American Preservation Builders, LLC, pursued a claim against F&D under the Payment Bond in excess of $291,460.73 in Case No. 49D01-2212-PL-044633 in the Superior Court for Marion County, Indiana (the "PIPE Payment Bond Claim").

35. Howard Group, f/k/a Harding Group ("Howard"), who was a subcontractor of Defendant American Preservation Builders, LLC, pursued a claim against F&D under the Payment Bond in excess of $145,487.00 in Case No. 49D11-2206-PL-021394 in the Superior Court for Marion County, Indiana (the "Howard Payment Bond Claim").

36. Despite F&D's various demands, the Indemnitors failed to deposit a penny of collateral with F&D relative to the ShepCo Payment Bond Claim, PIPE Payment Bond Claim, or Howard Payment Bond Claim (collectively, the "Payment Bond Claims").

37. The Indemnitors' failure to deposit collateral with F&D relative to the Payment Bond Claims subjected F&D to significant liability and "Loss" related to the Payment Bond, the Payment Bond Claims, the Indemnitors' failure to timely and/or completely perform or comply with the Indemnity Agreement, F&D's enforcement of the Indemnity Agreement, and other acts of F&D to protect or procure F&D's rights and/or to lessen F&D's potential liability and/or "Loss."

38. After breaking many prior promises to resolve all Payment Bond Claims, the Indemnitors ultimately settled and/or resolved the PIPE Payment Bond Claim and the Howard Payment Bond Claim without any payment from F&D under the Payment Bond.

39. However, despite many promises to do so and their negotiation of a settlement of that claim for $360,000, the Indemnitors failed to resolve the ShepCo Payment Bond Claim and/or pay any portion of the $360,000 settlement payment it had negotiated to resolve the ShepCo Payment Bond Claim.

40. Therefore, following its independent investigation and consultation with Defendant American Preservation Builders, LLC regarding its potential defenses, F&D determined that the settlement of the ShepCo Payment Bond Claim for $330,000 was necessary and expedient under the circumstances.

41. As reflected by the Final Conditional Release, Lien Waiver, and Release of Bond Claim attached hereto as **Exhibit 3**, ShepCo accepted a settlement payment from F&D of $330,000 under the Payment Bond to settle and release its claims against F&D, American Preservation Builders, LLC, and others.

42. However, despite F&D's demands, the Indemnitors have failed to indemnify or reimburse a penny of the "Loss" F&D has incurred and/or continues to incur related to the Payment Bond, the Payment Bond Claims, the Indemnitors' failure to timely and/or completely perform or comply with the Indemnity Agreement, F&D's enforcement of the Indemnity Agreement, and other acts of F&D to protect or procure F&D's rights and/or to lessen F&D's potential liability and/or "Loss," which "Loss" currently exceeds $361,427.

## IV. CAUSES OF ACTION

### Count I — Breach of the Indemnity Agreement (Damages)

43. F&D incorporates the foregoing allegations as if fully set forth verbatim herein.

44. Paragraph 2 of the Indemnity Agreement jointly and severally obligates the Indemnitors to exonerate, indemnify, and hold F&D harmless from any and all liability and Loss, sustained or incurred, arising from or related to (a) the Payment Bond, (b) the Payment Bond Claims, (c) the Indemnitor' failure to timely and completely perform or comply with the Indemnity Agreement, (d) F&D's enforcement of the Indemnity Agreement, or (e) any act of F&D to protect or procure any of F&D's rights, protect or preserve any of F&D's interests, or to avoid, or lessen F&D's liability or "Loss."

45. To date, F&D has sustained/incurred and continues to sustain/incur "Loss" arising from or related to (a) the Payment Bond, (b) the Payment Bond Claims, (c) the Indemnitor' failure to timely and completely perform or comply with the Indemnity Agreement, (d) F&D's

enforcement of the Indemnity Agreement, or (e) any act of F&D to protect or procure any of F&D's rights, protect or preserve any of F&D's interests, or to avoid, or lessen F&D's liability or "Loss."

46. Despite F&D's demands, however, the Indemnitors have failed to indemnify or reimburse any of F&D's "Loss" in violation of Paragraph 2 of the Indemnity Agreement.

47. The Indemnitors' failure to indemnify or reimburse any of F&D's "Loss" constitutes a material breach of the Indemnity Agreement.

48. F&D has been damaged as a result of the Indemnitors' material breach of the Indemnity Agreement in an amount to be proven at trial, which amount currently exceeds $361,427.

49. Therefore, F&D is entitled to the entry of judgment against the Indemnitors, jointly and severally, in an amount sufficient to fully exonerate, indemnify, and hold F&D harmless from any and all liability and Loss, sustained or incurred, arising from or related to (a) the Payment Bond, (b) the Payment Bond Claims, (c) the Indemnitor' failure to timely and completely perform or comply with the Indemnity Agreement, (d) F&D's enforcement of the Indemnity Agreement, or (e) any act of F&D to protect or procure any of F&D's rights, protect or preserve any of F&D's interests, or to avoid, or lessen F&D's liability or "Loss," which amount will be proven at trial but currently exceeds $361,427.

**Count II— Specific Performance of the Indemnity Agreement (Books and Records)**

50. F&D incorporates the foregoing allegations as if fully set forth verbatim herein.

51. Paragraph 11 of the Indemnity Agreement jointly and severally requires the Indemnitors to promptly (a) provide F&D with any and all information and documentation concerning the business or financial situation of any Indemnitor or any subsidiary, affiliate, or

Related Entity of any Indemnitor as requested by F&D and (b) grant F&D access to examine and copy the books, records, and accounts of Indemnitors and of any entity under the control of any Indemnitor at no cost to F&D.

52. To date, the Indemnitors have provided only limited information/documentation concerning the business/financial situation of the Indemnitors and/or granted only limited access to their books, records, and accounts in violation of Paragraph 11 of the Indemnity Agreement.

53. The Indemnitors' failure to (a) provide F&D with any and all information and documentation concerning the business or financial situation of any Indemnitor or any subsidiary, affiliate, or Related Entity of any Indemnitor as requested by F&D and/or (b) grant F&D access to examine and copy the books, records, and accounts of Indemnitors and of any entity under the control of any Indemnitor at no cost to F&D constitutes a material breach of the Indemnity Agreement.

54. F&D lacks an adequate remedy at law in relation to the Indemnitors' violation of Paragraph 11 of the Indemnity Agreement.

55. Therefore, F&D is entitled to the entry of a judgment compelling the Indemnitors to specifically perform their obligation to provide F&D with any and all information and documentation concerning the business or financial situation of any Indemnitor or any subsidiary, affiliate, or Related Entity and grant F&D access to examine and copy the books, records, and accounts of the Indemnitors pursuant to Paragraph 11 of the Indemnity Agreement.

WHEREFORE, PREMISES CONSIDERED, F&D prays for the following relief:

a) For the issuance of process requiring the Indemnitors to answer F&D's Complaint;

b) For the entry of judgment against the Indemnitors, jointly and severally, in an amount sufficient to fully exonerate, indemnify, and hold F&D harmless from any and all liability and "Loss," sustained or incurred, arising from or related to (a) the Payment Bond, (b) the Payment Bond Claims, (c) the Indemnitor' failure to timely and completely perform or comply with the Indemnity Agreement, (d) F&D's enforcement

of the Indemnity Agreement, or (e) any act of F&D to protect or procure any of F&D's rights, protect or preserve any of F&D's interests, or to avoid, or lessen F&D's liability or "Loss," which amount will be proven at trial but currently exceeds $361,427;

c) For the entry of a judgment compelling the Indemnitors to specifically perform their obligation to provide F&D with any and all information and documentation concerning the business or financial situation of any Indemnitor or any subsidiary, affiliate, or Related Entity and grant F&D access to examine and copy the books, records, and accounts of the Indemnitors pursuant to Paragraph 11 of the Indemnity Agreements; and

d) For such further relief, both general and specific, as may be appropriate in accordance with the nature of this cause including, but not limited to, pre-judgment and post-judgment interest.

Respectfully submitted,

/s/ Jarrod W. Stone
Jarrod W. Stone     OH bar No. 0096122
MANIER & HEROD
1201 Demonbreun Street, Suite 900
Nashville, Tennessee 37203
Phone: (615) 244-0030
Fax: (615) 242-4203
jstone@manierherod.com
*Attorney for Plaintiff Fidelity and Deposit Company of Maryland*