UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| FIDELITY AND DEPOSIT COMPANY OF MARYLAND, | ) CASE NO. 1:24-cv-209 |
| | ) |
| | ) JUDGE CHARLES E. FLEMING |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FRANK SINITO, *et al.*, | ) **MEMORANDUM OPINION AND** |
| | ) **ORDER** |
| Defendants. | ) |

Before the Court is Plaintiff's motion for summary judgment (ECF No. 22). Defendants filed a timely brief in opposition, (ECF No. 23), and Plaintiff a timely reply in support, (ECF No. 24). For the reasons discussed below, Plaintiff's motion for summary judgment is **GRANTED**.

**I.     FACTUAL BACKGROUND**

Before this case was initiated, Defendant American Preservation Builders, LLC ("APB") was an organization that engaged in the construction contracting business and sometimes needed to obtain surety bonds as a condition of bidding on and/or entering into construction contracts. (ECF No. 1, PageID #4, ¶ 12; ECF No. 17, PageID #98, ¶ 12; ECF No. 22-2, PageID #142, ¶ 2). Plaintiff Fidelity and Deposit Company of Maryland ("F&D") is an organization authorized to issue such surety bonds in Ohio and throughout the United States. (ECF No. 22-2, PageID #142, ¶ 2).

On April 14, 2016, Defendants APB, Millennia Housing Development, Ltd. ("MHD"), and Millennia Housing Management, Ltd. ("MHM"), as well as Frank Sinito and Malisse Sinito (who

1

are members of APB, MHD, and MHM),[1] executed a General Indemnity Agreement in favor of F&D with respect to certain construction contracts ("Indemnity Agreement"). (ECF No. 1-1, PageID #15–23; ECF No. 22-2, PageID #142, ¶ 2; ECF No. 23, PageID #213, ¶ 45). In relevant part, Defendants agreed to indemnify F&D as follows:

> Indemnitors shall exonerate, indemnify, and hold Surety harmless from any and all liability and Loss, sustained or incurred, arising from or related to: (a) any Bond, (b) any Claim, (c) any Indemnitor failing to timely and completely perform or comply with this Agreement, (d) Surety enforcing this Agreement or (e) any act of Surety to protect or procure any of Surety's rights, protect or preserve any of Surety's interests, or to avoid, or lessen Surety's liability or alleged liability. The liability of Indemnitors to Surety under this Agreement includes all Claims made on Surety, all payments made, Loss incurred, and all actions taken by Surety under the Good Faith belief that Surety is, would be or was liable for the amounts paid or the actions taken, or that it was necessary or expedient to make such payments or take such actions, whether or not such liability, necessity or expediency existed.

(ECF No. 1-1, PageID #15, ¶ 2). In the same Indemnity Agreement, Defendants also agreed to give F&D access to certain information:

> Indemnitors shall promptly provide Surety with any and all information and documentation concerning the business or financial situation of any Indemnitor or any subsidiary, affiliate or Related Entity of any Indemnitor, as requested by Surety. Indemnitors shall furnish on demand, and Surety shall have the right to access, examine and copy the books, records and accounts of Indemnitors and of any entity under the control of any Indemnitor, at no cost to Surety.

(*Id.* at PageID #16, ¶ 11).

Pursuant to the Indemnity Agreement, F&D executed Payment Bond No. 9243096 in the amount of $19,812,489.00 ("Payment Bond"). (ECF No. 1-2, PageID #24–30). The Payment Bond named: (i) APB as the Contractor; (ii) F&D as the Surety; and (iii) Hubbard Gardens IN TC, LP ("Hubbard") as the Owner. (*Id.* at PageID #24). The Payment Bond relates to a construction contract dated October 12, 2017 ("Construction Contract") between APB and Hubbard in the

---

[1] Defendants may be referred to collectively as either "Defendants" or "Indemnitors" and may be referred to individually as an "Indemnitor."

2

initial amount of $19,812,489.00 for certain renovations on a project known as Hubbard Gardens (the "Project").  (*Id.*; ECF No. 22-2, PageID #142–43, ¶ 4; ECF No. 23, PageID #213, ¶ 6).

In relation to the Construction Contract, several subcontractors of APB made claims against the Payment Bond in excess of $783,859.67.  (ECF No. 22-2, PageID #143, ¶ 6).  Shepherd Company, LLC d/b/a ShepCo Commercial Finishes ("ShepCo") asserted a claim against F&D under the Payment Bond in excess of $346,911.94 in Case No. 49D11-2206-PL-021394 in the Superior Court for Marion County, Indiana ("ShepCo Payment Bond Claim").  (ECF No. 22-2, PageID #143, ¶ 6; ECF No. 23, PageID #213, ¶ 7).  P.I.P.E., Inc. ("PIPE") also asserted a claim against F&D under the Payment Bond in excess of $291,460.73 in that same case ("PIPE Payment Bond Claim").  (ECF No. 22-2, PageID #143, ¶ 6; ECF No. 23, PageID #213, ¶ 7).  Finally, Howard Group, f/k/a Harding Group ("Howard") asserted a claim against F&D under the Payment Bond in excess of $145,487.00 in a separate case before the Superior Court for Marion County, Indiana ("Howard Payment Bond Claim").  (ECF No. 22-2, PageID #143, ¶ 6; ECF No. 23, PageID #213, ¶ 7).

In a March 31, 2023 letter, F&D notified Defendants of the ShepCo and PIPE Payment Bond Claims and demanded that:

> before the close of business on April 7, 2023— the Indemnitors (1) deposit cash or other acceptable collateral with F&D in the amount of $688,372.67 pursuant to Paragraph 4 of the Indemnity Agreement, and (2) confirm that the Indemnitors will provide F&D and/or its agents access to the books, records and accounts of Indemnitors and any entity under the control of any Indemnitor pursuant to Paragraph 11 of the Indemnity Agreement - including all documents/information relating to APB's defenses to the Claims.

(ECF No. 22-2, PageID #158–59).  After Defendants failed to deposit collateral or provide access to their books, records, and accounts, F&D sent Defendants a June 16, 2023 letter stating:

> [U]nless the Indemnitors fully fund the resolution of or directly resolve the Claims in the interim, F&D will (1) negotiate, settle, and pay the Claims no later than July

3

>  7, 2023 and (2) seek indemnification/reimbursement from the Indemnitors for all "Loss" F&D has incurred in relation to the Payment Bond and/or the Claims including (a) F&D's settlement payments to the Claimants and (b) F&D's investigative fees and expenses.

(*Id.* at PageID #171–72).

Defendants were able to subsequently resolve and satisfy the PIPE Payment Bond Claim and the Howard Payment Bond Claim. (ECF No. 22-2, PageID #145, ¶ 9; ECF No. 23, PageID #213, ¶ 10). By contrast, although Defendants were able to negotiate a settlement of the ShepCo Payment Bond Claim for $360,000, they were unable to fund the settlement payment; PNC Bank would not release allocated funds because of an ongoing dispute related to the Project. (ECF No. 22-2, PageID #145, ¶ 9; ECF No. 23, PageID #214, ¶ 11). On September 28, 2023, F&D exercised its right under the Indemnity Agreement to settle any "claims" against the Payment Bond and settled the ShepCo Payment Bond Claim for $330,000.00, executing a Final Conditional Release, Lien Waiver and Release of Bond Claim. (ECF No. 1-3; ECF No. 22-2, PageID #145, ¶ 9; ECF No. 23, PageID #214, ¶ 12).

Frank Sinito sent a January 9, 2024 letter to F&D informing it of PNC's failure to release the allocated funds and his belief that the funds would be released within the month. (ECF No. 23, PageID #215–16). In a January 24, 2024 letter, F&D advised Defendants Frank and Malisse Sinito that, despite the challenges facing Defendants, F&D was entitled to indemnity/reimbursement from Defendants; it further stated F&D would file a complaint in federal court seeking judicial enforcement of its rights under the Indemnity Agreement if it did not receive full indemnity/reimbursement in the amount of $361,427 on or before January 31, 2024. (ECF No. 22-2, PageID #189–206). To this date, Defendants have failed to indemnify F&D for the "Loss" exceeding $368,153.00 related to F&D's settlement of the ShepCo Payment Bond Claim. (*Id.* at PageID #145–46, ¶¶ 10–11; *see* ECF No. 23, PageID #214, ¶ 13).

4

## II. PROCEDURAL BACKGROUND

On February 2, 2024, F&D filed a complaint against Defendants. (ECF No. 1). The complaint generally alleges that Defendants materially breached the Indemnity Agreement by: (i) failing to indemnify or reimburse F&D for the "Loss" incurred by its settlement of the ShepCo Payment Bond Claim; and (ii) failing to provide F&D with requested information or granting F&D access to the books, records, and accounts of Defendants or entities under control of any defendant. (*Id.* at PageID #4–13). The complaint asserts two causes of action: (i) "Breach of the Indemnity Agreement (Damages)" (Count I); and (ii) "Specific Performance of the Indemnity Agreement (Books and Records)" (Count II). (*Id.* at PageID #11–13). For relief, the complaint requests damages against Defendants, jointly and severally, in the amount of $361,427 and an order compelling specific performance of the records access provision of the Indemnity Agreement. (*Id.* at PageID #13–14). Defendants filed their answer on April 19, 2024. (ECF No. 17).

On May 2, 2025, F&D filed the instant motion for summary judgment. (ECF No. 22). In its memorandum of law in support, F&D argues that: (i) the Indemnity Agreement is clear, unambiguous, and enforceable under Ohio law; (ii) there is no issue of material fact that Defendant breached the Indemnity Agreement by failing to indemnify the "Loss" suffered by F&D; and (iii) there is no issue of material fact that F&D is entitled to specific performance of Defendants' duty to furnish access to the books, records, and accounts of Defendants or controlled entities. (ECF No. 22-1, PageID #132–39). F&D requests that the Court issue summary judgment in its favor and: "(1) enter a money judgment against the Indemnitors, jointly and severally, in the amount of $368,153.00 with respect to Count I of F&D's Complaint"; and "(2) enter a judgment compelling the Indemnitors to specifically perform their joint and several obligation to furnish

F&D access to the books, records, accounts, etc. of the Indemnitors and any 'Related Entity' with respect to Count II of F&D's Complaint." (*Id.* at PageID #139).

On June 2, 2025, Defendants filed their brief in opposition. (ECF No. 23). They argue that they have not materially breached the Indemnity Agreement because Defendants intend to indemnify F&D with regard to the ShepCo Payment Bond Claim as soon as "PNC" releases the allocated funds—noting that PNC has refused to release said funds because of an unresolved dispute. (*Id.* at PageID #208–10). On June 16, 2025, F&D filed its reply in support of the motion for summary judgment. (ECF No. 24).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. The Rule states that the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if it is "based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Henderson v. Walled Lake Consol. Schools*, 469 F.3d 479, 487 (6th Cir. 2006). A fact is material if "its resolution might affect the outcome of the suit under the governing substantive law." *Id*. The moving party bears the burden of showing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The court views the facts and draws all reasonable inferences in favor of the non-moving party. *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018). Once the moving party satisfies its burden, the burden shifts to the non-moving party to produce evidence that demonstrates that there is a genuine dispute of a material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986); *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)).

6

IV. **DISCUSSION**

    A. **Count I – Damages for Breach of the Indemnity Agreement**

F&D argues that it is entitled to summary judgment in its favor on Count I because there is no issue of material fact that Defendants materially breached the Indemnity Agreement by failing to indemnify F&D for the $368,153.00 "Loss" it incurred by settling the ShepCo Payment Bond Claim in good faith, as well as failing to deposit any collateral with respect to said loss. (ECF No. 22-1, PageID #134–36). Defendants respond that they have not materially breached the Indemnity Agreement because: (i) PNC refuses to release funds allocated to resolve and satisfy the ShepCo Payment Bond Claim; (ii) F&D knew of this dispute and "prematurely" settled the claim; and (iii) Defendants intend to resolve and satisfy the ShepCo Payment Bond Claim once PNC releases the funds. (ECF No. 23, PageID #209–10).

The Court finds that there is no issue of material fact that Defendants materially breached the Indemnity Agreement. The parties do not dispute, and the evidence establishes, that: (i) F&D and Defendant executed the Indemnity Agreement,[2] (ECF No. 1-1; ECF No. 22, PageID #142, ¶ 2; ECF No. 23, PageID #213, ¶ 5); (ii) in accordance with the Indemnity Agreement, F&D executed the Payment Bond for the Construction Contract, (ECF No. 1-2; ECF No. 22, PageID #142, ¶ 3; ECF No. 23, PageID #213, ¶ 6); (iii) ShepCo asserted the ShepCo Payment Bond Claim against the Payment Bond for an amount in excess of $346,911.94, (ECF No. 22, PageID #143, ¶ 6; ECF No. 23, PageID #213, ¶ 7); (iv) F&D settled the ShepCo Payment Bond Claim for $330,000 in September 2023, (ECF No. 1-3; ECF No. 22, PageID #145, ¶ 9; ECF No. 23, PageID #214, ¶ 12); and (v) Defendants have not indemnified F&D for the loss it incurred in settling the ShepCo Payment Bond Claim, (ECF No. 22, PageID #145, ¶ 10; ECF No. 23, PageID #214, ¶ 13). There

---

[2] Defendants did not provide any arguments attacking the validity and enforceability of the Indemnity Agreement.

7

is also no dispute that, under the terms of the Indemnity Agreement, F&D's settlement of the ShepCo Payment Bond Claim constitutes a "Loss" for which Defendants are obligated to indemnify F&D. (ECF No. 1-1, PageID #15, 19, ¶¶ 2, 30).

Defendants do not provide any specific legal argument as to why they have not materially breached the Indemnity Agreement. Instead, they simply state that: (i) F&D "prematurely" settled the ShepCo Payment Bond Claim; and (ii) Defendants intend to indemnify F&D once PNC releases certain funds that PNC has refused to release due to a separate, ongoing dispute. (ECF No. 23, PageID #210). Defendants do not explicitly argue that these two circumstances excuse Defendants' duty to indemnify F&D for the cost of settling the ShepCo Payment Bond Claim; nor do they provide any legal authority to support such an argument.

To the extent that Defendants obliquely argue that F&D settled the ShepCo Payment Bond Claim in bad faith, the Court finds that such an argument fails. The Indemnity Agreement grants F&D the "absolute and unconditional" right to settle any "Claim" against Defendants; the ShepCo Payment Bond Claim was asserted in a lawsuit in state court against F&D under the Payment Bond, which meets the Indemnity Agreement's definition of a "Claim." (*See* ECF No. 1-1, PageID #15, 18, ¶¶ 3, 30). Moreover, Defendants are obligated to indemnify Claims settled in "Good Faith," which is defined as, "with respect to any act, exercise of discretion or omission by [F&D], an absence of dishonesty, evil intent and actual malice toward Principal and [Defendants]." (ECF No. 1-1, PageID #15, 19, ¶¶ 2, 30). Defendants have provided no evidence, no caselaw, and no explicit argument, that F&D's settlement of the ShepCo Payment Bond Claim was not made in "Good Faith" under the terms of the Indemnity Agreement. They have also provided no evidence to dispute the assertions in Marcha Durcan's sworn declaration that F&D determined that

8

settlement of the ShepCo Payment Bond Claim was necessary and expedient under the circumstances. (ECF No. 22-2, PageID #144–45, ¶¶ 8–9).

Finally, to the extent Defendants intended to argue that there is no material breach of the Indemnity Agreement because they intend to indemnify F&D once PNC releases the disputed funds, this argument also fails. The Indemnity Agreements provides that:

> Indemnitors shall *promptly*, upon demand, procure the full and complete discharge of [F&D] from all Bonds and all liability in connection with such Bonds. If Indemnitors are unable to obtain discharge of any or all such Bonds within the time demanded, Indemnitors shall *promptly* deposit with [F&D] an amount of money that [F&D] determines is sufficient to collateralize or pay any outstanding bonded obligations.

(ECF No. 1-1, PageID #15, ¶ 2) (emphasis added). Evidence demonstrates that F&D has made several demands to Defendants to either indemnify the loss associated with the ShepCo Payment Bond Claim or deposit acceptable collateral—specifically in March 2023, June 2023, and January 2024. (ECF No. 22-2, PageID #144–45, ¶¶ 7, 10; *id.* at PageID #158–59, 171–73, 189–91). It is now November 2025, and Defendants concede that they have neither indemnified F&D nor deposited collateral with relation to the ShepCo Payment Bond Claim. There is no material issue of fact that Defendants breached the Indemnity Agreement by failing to *promptly* discharge the ShepCo Payment Bond Claim or deposit sufficient collateral after F&D made several demands under the terms of the agreement. There is no provision in the Indemnity Agreement conditioning Defendants' obligation to reimburse or provide collateral on the release of funds by a third party. Defendants had a duty to comply with the Indemnity Agreement or risk breach. The fact that PNC will not release specific funds allocated for the payment of the ShepCo Payment Bond Claim is

9

irrelevant to whether Defendants are liable for breaching the Indemnity Agreement.[3]  Accordingly, the Court **GRANTS** summary judgment in F&D's favor as to Count I.

### B. Count II – Specific Performance/Access to Defendants' Books and Records

F&D argues that it is entitled to specific performance of Defendants' duty under the Indemnity Agreement to furnish access to books, records, and accounts of Defendants and any related entity because there is no adequate remedy at law (*e.g.*, damages) with relation to F&D's lack of access. (ECF No. 22-1, PageID #136–39).  F&D argues that "[c]ourts in Ohio and throughout the United States have recognized that sureties such as F&D lack an adequate remedy at law in relation to the breach of the books and records provision of an indemnity agreement[,]" citing a list of cases both inside and outside the Sixth Circuit. (*Id.* at PageID #137–38 & n.3). F&D notes that paragraph 11 of the Indemnity Agreement clearly and ambiguously confers a right to free access to F&D, and paragraph 16 confirms that F&D has no adequate remedy at law and is entitled to specific performance of the right to free access. (*Id.* at PageID #138–39 (citing ECF No. 1-1, at PageID #16–17)).  Defendants' response does not provide any opposition to these arguments raised by F&D; nor does it otherwise address the issue of specific performance for this claim. (*See* ECF No. 23).

Because Defendants failed to respond to or oppose F&D's arguments on this issue, Defendants have waived any opposition or argument against granting summary judgment in F&D's favor on Count II.  *See Humphrey v. United States Att'y Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008); *A.B. Pratt & Co. v. Bridgeport Grp., LLC*, No. 1:22-cv-1579, 2023 U.S. Dist. LEXIS 62708, at *73 (N.D. Ohio Apr. 10, 2023) (collecting cases); *see also Vanderbilt Univ. v.*

---

[3] To the extent that Defendants contend PNC has wrongly withheld the funds or PNC is in part liable for the breach of the Indemnity Agreement, they should have sought to implead PNC in this action under Rule 14(a) or pursued their own claims against PNC in a separate action.

*NLRB*, 759 F. Supp. 3d 812, 850 n.16 (M.D. Tenn. 2024) ("Given Defendants' failure to fulsomely address this point, whatever their rationale may be, the Court finds Defendants waived any such opposition for the purposes of resolving the motion here." (internal citations omitted)); *Lewis-Smith v. W. Ky. Univ.*, 85 F. Supp. 3d 885, 915 (W.D. Ky. 2015) ("When a party fails to respond to a motion or argument therein, the Sixth Circuit has held that the lack of response is grounds for the district court to assume opposition to the motion is waived and grant the motion."). That said, F&D is also entitled to summary judgment on the merits.

The Indemnity Agreement explicitly grants F&D the right to access, examine and copy the books, records, and accounts of Defendants or any entity under the control of Defendants. (ECF No. 1-1, PageID #16, ¶ 11). Under the agreement, Defendants also: (i) acknowledge that its failure to comply with the right to access provision will cause irreparable harm to F&D for which it has no adequate remedy at law; and (ii) agree that F&D shall be entitled to specific performance in such a circumstance. (*See id.* at PageID #17, ¶ 16). Under Ohio law, specific performance is an equitable remedy that is available only when there is no adequate remedy at law. *Trans Union Credit Info. Co. v. Associated Credit Servs., Inc.*, 805 F.2d 188, 192 (6th Cir. 1986) (citing *State ex rel. Curd v. Backhaus*, 56 Ohio App. 2d 79, 82, 381 N.E.2d 646, 648–49, 10 Ohio Op. 3d 101 (1977)); *Yellow Brick Rd. Auctions, LLC v. Dixon*, 2025-Ohio-1934, ¶ 19 (Ohio Ct. App. 2025); *Widok v. Est. of Wolf*, 2020-Ohio-5178, ¶¶ 81–82 (Ohio Ct. App. 2020).

As F&D asserts, courts have routinely granted summary judgment and ordered specific performance in order to enforce similar provisions in indemnity agreements that provide a surety with the right to access an indemnitor's books and records. *See, e.g.*, *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577. 584 (6th Cir. 2007) (holding that a plaintiff was entitled to specific performance of a contractual provision granting it the right to inspect the defendants' financial

records after concluding there was no adequate remedy through an award of monetary damages); *Old Republic Sur. Co. v. T&A Constr., Inc.*, No. 1:24-cv-194, 2024 U.S. Dist. LEXIS 193069, at *10–12 (N.D. Ohio Oct. 24, 2024) (ordering specific performance of an indemnity agreement's provision granting the plaintiff access to the defendant's financial records); *Int'l Fid. Ins. Co. v. Vimas Painting Co. Inc.*, No. 2:07-cv-298, 2009 U.S. Dist. LEXIS 63289, *25–26 (S.D. Ohio July 23, 2009) (same); *Great Am. Ins. Co. v. DJR, Inc.*, No. 1:23-cv-332, 2023 U.S. Dist. LEXIS 120321, at *11–12 (W.D. Tex. July 13, 2023); *Colonial Sur. Co. v. A&R Cap. Assocs.*, 420 F. Supp. 3d 38, 48 (E.D.N.Y. 2017) (collecting cases in which federal courts granted specific performance requests by sureties seeking access to indemnitors' financial information, books, and records). The Court adopts the reasoning of these cases and finds that F&D has no adequate remedy at law with respect to Defendants' breach of the right to access provision of the Indemnity Agreement. Thus, specific performance is an appropriate remedy in this case.

Accordingly, the Court **GRANTS** summary judgment in F&D's favor as to Count II and **ORDERS** Defendants and any "entity under control" of Defendants to provide F&D with access to their books, records, and accounts in accordance with the Indemnity Agreement.

V. **CONCLUSION**

For the foregoing reasons, F&D's motion for summary judgment (ECF No. 22) is **GRANTED**. The Court enters judgment as a matter of law in favor of F&D and against Defendants on Counts I and II of the complaint. The Court enters a money judgment in favor of F&D and against Defendants, jointly and severally, in the amount of $368,153.00.[4] Defendants

---

[4] In her sworn declaration, Marcha Durcan attests that F&D has sustained a loss in the amount $368,153.00 in relation to having settled the ShepCo Payment Bond Claim. (ECF No. 22-2, PageID #145–46, ¶ 11). Defendants did not dispute this amount.

are **ORDERED** to furnish F&D with access to the books, records, and accounts of Defendants and any entity under the control of any Defendant, in accordance with the Indemnity Agreement.

    **IT IS SO ORDERED.**

Date: November 13, 2025

_____
**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**